UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                      :

JAIME FELDMAN-BOLAND, *et ano.*,    :

                Plaintiffs,    :        15cv6698

                      :        <u>OPINION & ORDER</u>

          -against-    :

                      :

MORGAN STANLEY, *et al.*,    :

                      :

              Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, District Judge:

          Plaintiffs Jaime Feldman-Boland ("Feldman") and James Boland ("Boland"), a married couple, bring claims against their former employer Morgan Stanley, Morgan Stanley & Co. (f/k/a Morgan Stanley Smith Barney) (together, "Morgan Stanley"), and their former supervisor David Turetzky. Plaintiffs allege that they were fired in violation of the whistleblower protection provisions of Sarbanes-Oxley ("SOX"), 18 U.S.C. § 1514A, and Dodd-Frank, 15 U.S.C. § 78u-6(h)(1). Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), and to strike Plaintiffs' claims for emotional distress damages under SOX and "special damages" under Dodd-Frank. Defendants' motion to dismiss is granted with respect to the SOX claims against Turetzky, and otherwise denied.

<u>BACKGROUND</u>

          The following facts are gleaned from the Complaint and presumed true for purposes of this motion. In 2008, Feldman joined Morgan Stanley as a financial advisor. (Compl. ¶ 8.) At that time, she executed an agreement requiring her to split commissions from high-net-worth clients with a more senior Morgan Stanley advisor. In 2010, her husband, Boland, joined Morgan Stanley as a "trainee." (Compl. ¶¶ 13–15.)

Feldman alleges that her advisor—Michael Silverstein—ignored prospects that she pitched to Morgan Stanley.  As a result, she failed to meet her production goals.  (Compl. ¶ 10.)

In March 2011, Plaintiffs claim they witnessed Morgan Stanley employees violating federal securities laws and mail and wire fraud statutes.  Among other things, they observed: (1) unlicensed employees executing trades; (2) cold calling clients using deceitful practices (such as promising unrealistic annual returns to entice individuals to transfer 401(k) retirement plans into risky mutual funds); (3) retroactive alterations of clients' risk profiles to permit riskier investments; and (4) employees working without branch office supervision. (Compl. ¶¶ 17–25.)

In April 2011, Feldman met with Turetzky to complain about a variety of problems with Silverstein.  She also raised concerns regarding the fraudulent activity she had observed.  Turetzky became agitated and instructed her to leave his office.  (Compl. ¶ 32.)  Later, he requested a list of Feldman's clients and prospects.  Feldman claims that Turetzky sought permission to fire her on the pretext of substandard performance.  (Compl. ¶¶ 33–34.)

In May 2011, Feldman had an altercation with Silverstein that she reported to Turetzky.  She also reiterated her complaint that Silverstein failed to supervise brokers.  Rather than investigate her complaints, Morgan Stanley rejected a profitable commodities deal that she had proposed without any explanation.  (Compl. ¶¶ 36–38, 44.)

In June 2011, Boland wrote to Morgan Stanley's CEO, alerting him to "discriminatory, unethical and perhaps illegal practices" that could "escalate a very negative, public perception of the Firm."  (Compl. ¶ 46.)  Boland reiterated those concerns in follow-up communications with the Human Resources Department. (Compl. ¶ 48.)

In July 2011, Feldman and Boland submitted identical complaints to the SEC regarding fraudulent conduct.  (Compl. ¶ 55.)  In response, FINRA investigators met with Plaintiffs for six hours in early August.  (Compl. ¶ 56.)  Later that month, FINRA audited the Morgan Stanley branch where Plaintiffs worked.  FINRA's investigation focused on allegations of unsupervised employees and deceptive cold calling.  Plaintiffs overheard Morgan Stanley risk officers discussing their concerns about the specificity of FINRA's investigation.  (Compl. ¶¶ 59–61.)  Morgan Stanley's Regional Risk Officer concluded that Plaintiffs' complaints were "unsubstantiated," even though she never interviewed them.  (Compl. ¶¶62–63.)

In late August, Turetzky fired Feldman for substandard performance, despite the fact that she had just signed a $1.8 million account.  (Compl. ¶¶ 66–69.)  Boland claims that, thereafter, Morgan Stanley undermined his ability to develop business.  (Compl. ¶¶ 70–78.)  In September 2011, Boland informed Morgan Stanley risk officers that he had filed complaints with the SEC and FINRA.  (Compl. ¶ 74.)

In early November, Boland was permitted to take medical leave to care for Feldman, who was scheduled to undergo surgery.  Less than 48 hours after he returned to work, Morgan Stanley fired Boland under the pretext of substandard performance.  (Compl. ¶¶ 79–83.)

In February 2012, Feldman filed a complaint with the Occupational Safety and Health Administration ("OSHA") against Morgan Stanley, alleging that she was fired in retaliation for her complaints to regulators.  Three months later, Boland filed a complaint with OSHA mirroring his wife's allegations.

<u>LEGAL STANDARD</u>

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  <u>Rescuecom Corp. v. Google Inc.</u>,

3

562 F.3d 123, 127 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  Iqbal, 556 U.S. at 678 (citation omitted).

DISCUSSION

Defendants move to dismiss on the grounds that: (1) Plaintiffs' claims are barred by collateral estoppel; (2) the Complaint fails to state a plausible SOX or Dodd-Frank claim; (3) Plaintiffs failed to exhaust their administrative remedies under SOX; and (4) certain damages sought by Plaintiffs are unavailable under SOX and Dodd-Frank.

I.   Collateral Estoppel

Prior to filing this civil action, Feldman filed a gender-discrimination complaint with the New York City Commission on Human Rights ("NYCCHR"), and Boland filed a Family Medical Leave Act ("FMLA") complaint with the same agency.  (Ranjo Decl. Ex. 3, 15.)[1]  After investigating their complaints, the NYCCHR issued No Probable Cause Determinations and Orders, finding that each of them was "terminated for legitimate non-discriminatory reasons and not because of discrimination or retaliation." (Ranjo Decl. Ex. 10, 23.)  Defendants argue that these findings bar Plaintiffs' claims here.

Subject to certain statutory exceptions, "[t]he factual determinations of a state administrative agency, acting in a judicial capacity, are entitled to the same issue and claim

_____

[1] Plaintiffs' NYCCHR complaints are not referenced in their Complaint in this case.

preclusive effect in federal court that the agency's determinations would receive in the State's courts." Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 728 (2d Cir. 2001) (citing Univ. of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)).  To invoke collateral estoppel, a proponent must demonstrate that there was "identity of issue which has necessarily been decided and is decisive of the present action;" the burden then shifts to the party opposing collateral estoppel to demonstrate that they did not have "a full and fair opportunity to litigate the issue." Kosakow, 274 F.3d at 730 (citing Schwartz v. Public Adm'r, 246 N.E.2d 725 (N.Y. 1969)).  "The doctrine [of collateral estoppel] is a flexible one" requiring a "case-by-case analysis of the facts and realities." Buechel v. Bain, 97 N.Y.2d 295, 304 (2001) (noting that courts should consider "fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results.").

A.  Identity of Issues

Defendants argue that because the NYCCHR determined that both Feldman and Boland were discharged for legitimate non-retaliatory reasons, Plaintiffs' claims are collaterally estopped here.  Plaintiffs counter that there is no identity of issues between their claims before the NYCCHR and their whistleblower retaliation claims.

The underlying claims need not be identical for collateral estoppel to apply.  In Kosakow, the Second Circuit held that a New York State Division of Human Rights ("SDHR") judgment under the Americans with Disabilities Act addressed the identical issue as a federal FMLA case, despite the fact that the statutes and the fora applied different burdens of proof. Kosakow, 274 F.3d at 730–33.  The Court of Appeals reasoned that because the SDHR "made the factual determination that [the plaintiff] was terminated for a legitimate business reason," and because such a finding would also dispose of the plaintiffs' FMLA claim, "the issue of whether

[plaintiff] was terminated for [legitimate] reasons was necessarily decided in the prior action."
Kosakow, 274 F.3d at 733.[2]

To prevail in her NYCCHR case, Feldman was required to "demonstrate by a preponderance of the evidence that [Morgan Stanley] discriminated in the terms and conditions of her employment, on the basis of her gender, that [Morgan Stanley] allowed or created a hostile work environment, and that she complained about this discrimination and was terminated from her employment because she complained." (Ranjo Decl. Ex. 10, at 2.) Similarly, Boland's NYCCHR case required him to "demonstrate by a preponderance of the evidence that [Morgan Stanley] retaliated against him because he opposed discrimination and because he was associated with a person who was disabled, and that he was terminated from his employment for these reasons." (Ranjo Decl. Ex. 23 at 2.) The NYCCHR concluded in both cases that it was "more likely than not that [Plaintiffs were] terminated for legitimate, non-discriminatory reasons and not because of discrimination or retaliation." (Ranjo Decl. Ex. 10 at 7; Ex. 23, at 5.)

To establish a prima facie case under SOX, Plaintiffs need only establish that whistleblower retaliation "was a contributing factor" to their termination. Bechtel v. U.S. Dep't of Labor, 710 F.3d 443, 447 (2d Cir. 2013). Likewise, under Dodd-Frank, Plaintiffs need only establish that their termination was "causally connected" to protected whistleblower activity. Otto v. Fred Alger Mgm't, Inc., No. 11-cv-4418, 2012 WL 4767200, at *4 (S.D.N.Y. Sept. 27, 2012). Defendants would then need "to demonstrate by clear and convincing evidence that

---

[2] Defendants also rely heavily on the Third Circuit's unpublished decision in Tice v. Bristol-Myers Squibb Co., 325 F. App'x 114 (3d Cir. 2009). In Tice, the Third Circuit held that an OSHA decision addressing a SOX claim could preclude a Title VII claim, finding that the plaintiff was "precluded . . . from challenging the company's legitimate, non-pretextual reason for firing her . . . because the issue of [the company's] legitimate non-pretextual reason for firing [plaintiff] . . . was squarely addressed by the ALJ and essential to his decision." Tice, 325 F. App'x at 122.

Plaintiff[s'] employment would have been terminated in the absence of [any] protected activity."
Perez v. Progenics Pharm., Inc., 965 F. Supp. 2d 353, 368 (S.D.N.Y. 2013).

The issue of whether it was more likely than not that Plaintiffs were fired for reasons other than gender discrimination, or retaliation for taking family leave, is plainly not "identical" to the issue of whether Defendants can demonstrate by clear and convincing evidence that Plaintiffs would have been fired without engaging in activities under the whistleblower protections of SOX and Dodd-Frank. Cf. O'Hara v. Mem'l Sloan-Kettering Cancer Ctr., 79 F. App'x 471, 474 (2d Cir. 2003) (rejecting the district court's finding that the issue of whether "the reasons . . . provided for firing [a plaintiff] were a pretext for [] discrimination" was identical to the issue of whether the reasons provided for firing a plaintiff were "a pretext to cover a retaliatory motive"). Accordingly, Defendants have not demonstrated an identity of issues here.

B. Full and Fair Opportunity to Litigate

Even if there were an identity of issues, Plaintiffs did not have a full and fair opportunity to litigate the issue before the NYCCHR. In Kosakow, the court reviewed the SDHR procedures and noted that "there was no record of any discovery being conducted, nor is there any record of any interviews of witnesses [nor a hearing.] It appears that the no-probable cause determination was based primarily, if not exclusively, upon a review of the papers submitted." Kosakow, 274 F.3d at 734–36. Accordingly, the court concluded that "the issue of whether Kosakow was terminated for legitimate business reasons was not 'adequately tested' or 'fully aired' at the DHR proceeding." Kosakow, 274 F.3d at 736. By contrast, in Tice, the Third Circuit concluded that there was a full and fair opportunity to litigate where "[t]he prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by

competing sides, and a reasoned opinion written by an administrative law judge." Tice, 325 F.

App'x at 117 (quoting Tice v. Bristol-Myers Squibb Co., 515 F. Supp. 2d 580, 600 (W.D. Pa.

2007)).

        Here, the NYCCHR proceedings were far more similar to the proceedings found

insufficient in Kasakow.  Plaintiffs were not afforded an evidentiary hearing where they could

confront witnesses against them, nor did they have the benefit of discovery.  Moreover, it seems

that Plaintiffs had no opportunity, and certainly no apparent reason, to introduce issues of

retaliation under SOX or Dodd-Frank before the NYCCHR.  Accordingly, collateral estoppel

does not preclude Plaintiffs' claims.  See Vargas v. City of New York, No. 01-cv-7093 (LAP),

2008 WL 361090, at *4 (S.D.N.Y. Feb. 7, 2008) (holding that "collateral estoppel would not

apply to NYSDHR adjudications, notwithstanding identity of issue, because, under New York

law, NYSDHR plaintiffs are not afforded a 'full and fair opportunity' to litigate their

discrimination claims in that forum.") (citing Kosakow, 274 F.3d at 736).

II.    Failure to State a Claim

        In order to state a whistleblower retaliation claim, both SOX and Dodd-Frank

require plaintiffs to demonstrate, among other things, that they engaged in protected activity, that

their employer knew they engaged in protected activity, and that there was a causal connection

between the protected activity and an adverse employment action.  See Nielsen v. AECOM

Tech. Corp., 762 F.3d 214, 219 (2d Cir. 2014) (SOX);[3]  Ott v. Fred Alger Mgmt., Inc., No. 11-

cv-4418 (LAP), 2012 WL 4767200, at *4 (S.D.N.Y. Sept. 27, 2012) (Dodd-Frank).

        Defendants argue that the Complaint fails to allege facts sufficient to show that

they were are of Plaintiffs' complaints to the SEC before terminating them.  But Feldman first

_____

[3] For SOX claims, the "causal connection" is framed as being a "contributing factor" in the adverse
employment action.

8

raised her concerns with Turetzky in April 2011, and Boland followed suit in June 2011.[4] Because the August 2011 FINRA audit addressed some of the same issues raised by Plaintiffs, it would be reasonable to infer that Morgan Stanley knew, or had sufficient reason to know, that Plaintiffs had filed a complaint with regulators precipitating the audit.  This is reinforced by Plaintiffs' allegations that Morgan Stanley coworkers observed them documenting regulatory violations.  Moreover, Boland alleges that he informed Morgan Stanley risk officers, prior to his termination, that he filed complaints with the SEC and FINRA.  In view of these allegations, Plaintiffs have plausibly pled that Morgan Stanley was aware they engaged in protected activity.

  III.    Exhaustion of Administrative Remedies Under SOX

        SOX "requires that allegations of violations of § 1514A(a) first be presented by filing a complaint with [OSHA].  Section 1514A(b)(1)(B) empowers a federal district court to hear only those claims for which this administrative remedy has been exhausted."  Portes v. Wyeth Pharm., Inc., No. 06-cv-2689 (WHP), 2007 WL 2363356, at *6 (S.D.N.Y. Aug. 20, 2007).  Failure to comply deprives courts of subject matter jurisdiction.  See Fraser v. Fiduciary Trust Co., Int'l, No. 04-cv-6958 (RMB), 2005 WL 6328596, at *6 (S.D.N.Y. June 23, 2005). "The appropriate inquiry under SOX is not whether every fact forming the basis for the belief that gave rise to a plaintiff's protected activity was previously administratively pled, but whether each separate and distinct claim was pled before the agency."  Sharkey v. J.P. Morgan Chase & Co., 805 F. Supp. 2d 45, 53 (S.D.N.Y. 2011).  Plaintiffs bear the burden of establishing jurisdiction.  See Sharkey, 805 F. Supp. 2d at 51.

---

[4] Defendants attach a copy of the email and note that it does not discuss any conduct that could be construed as a violation of any law, rule or regulation enumerated in SOX.  This Court may consider the email here because it is referenced in the Complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the Complaint states that in a follow-up call with HR "Boland brought up his concerns about fraudulent conduct at the branch."  (Compl. ¶ 48 (emphasis added).)

Plaintiffs filed separate OSHA complaints asserting claims under SOX. Feldman's complaint alleged that Plaintiffs "informed both Greg Fleming, President and James Gorman, CEO of Morgan [Stanley] of improper and unlawful broker practices she had observed in the previous months and when Morgan [Stanley] failed to contact an appropriate investigation into the reported unlawful practices, Feldman and Boland reported their concerns to the SEC and FINRA." (Feldman Aff. Ex. A ¶ 8.)  Similarly, Boland's OHSA complaint alleges reports to Gorman and others regarding "improper and unlawful brokerage practices" and "open regulatory corruption." (Boland Aff. Ex. A ¶¶ 10–12.)  However, while both OSHA complaints catalogue incidents with Silverstein, they are bereft of details regarding the allegedly unlawful acts detailed in ¶¶ 17–25 of the Complaint here.  And Turetzky was not named as a defendant in either OSHA complaint.

Defendants argue that SOX claims against Turetzky must be dismissed because the OSHA complaints do not name Turetzky as a defendant.   Plaintiffs counter that they exhausted their remedies against Turetzky because OSHA was put on notice that Turetzky was a subject of their claims.  However, "[i]t is not sufficient to merely mention an individual in the body of an administrative complaint" without specifically "listing as [a] defendant . . . the particular 'named person.'"  Smith v. Corning Inc., No. 06-cv-6516, 2007 WL 2120375, at *2 (W.D.N.Y. July 23, 2007).  Plaintiffs therefore "failed to exhaust . . . administrative remedies as against [Turetzky], by failing to include [Turetzky] as a named person in the administrative complaint."  Smith, 2007 WL 2120375, at *2.  Accordingly, the SOX claim against Turetzky is dismissed.

Defendants also argue that because certain allegedly protected activities and

violations of law were not specifically pled in the OSHA complaints, Plaintiffs failed to exhaust their remedies with respect to those claims.  Feldman and Boland counter that their OSHA complaints presented the "specific adverse employment actions, protected activity, and the general nature of the facts that formed Plaintiffs' belief in violations of the enumerated states giving rise to the protected activity" such that the Complaint's "more specific allegations naturally originat[e] from those assertions."  Sharkey v. J.P. Morgan Chase & Co., 805 F. Supp. 2d 45, 53 (S.D.N.Y. 2011).  While Plaintiffs are correct that their OSHA complaints specify the adverse employment actions (termination), and protected activity (notifying regulators), there is little information regarding violations directly relevant to this civil action.   However, given that the OHSA complaints pled allegations concerning Defendants' "improper and unlawful broker practices," and because "'no particular form of complaint' is required to trigger a claim before OSHA,'" Sharkey, 805 F. Supp. 2d at 53 (quoting 29 C.F.R. § 1980.103(b)), this Court finds that Plaintiffs exhausted their administrative remedies with respect to their SOX claims against Morgan Stanley.

  IV.  Motion to Strike

            Defendants move to strike Plaintiffs' claims for emotional distress damages under SOX, and for "special damages" under Dodd-Frank.   With respect to damages for emotional distress, every circuit court to address the issue holds that such damages may be recoverable pursuant to SOX's language stating that a prevailing employee "shall be entitled to all relief necessary to make the employee whole."  18 U.S.C. § 1514A(c)(1).  See Jones v. Southpeak Interactive Corp. of Delaware, 777 F.3d 658, 672 (4th Cir. 2015); Halliburton, Inc. v. Admin. Review Bd., 771 F.3d 254, 266 (5th Cir. 2014); Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1138 (10th Cir. 2013).  Thus, if damages for emotional distress are required to

make an employee whole, they are not precluded by SOX.  Moreover, while Dodd-Frank does not permit emotional damages, it does permit "litigation costs, expert witness fees and reasonable attorneys' fees."  15 U.S.C. § 78u-6(h)(1)(C).  To the extent Plaintiffs seek "special damages" enumerated in the statute, such damages are not prohibited as a matter of law. Accordingly, Defendants' motion to strike is denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' SOX claims against Turetzky are dismissed. Defendants' motion to dismiss is otherwise denied.

The Clerk of Court is directed to terminate the motion pending at ECF No. 22.

Dated: July 13, 2016
       New York, New York


SO ORDERED:


_____
WILLIAM H. PAULEY III
U.S.D.J.